IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-066-CR





CARROLL GLENN SCOTT,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 40,752, HONORABLE RICK MORRIS, JUDGE PRESIDING



 




 Appellant was charged in a single indictment with the offenses of attempted capital
murder, Tex. Penal Code Ann. §§ 15.01 (West Supp. 1993) & 19.03 (West 1989 & Supp. 1993),
and burglary of habitation, Tex. Penal Code Ann. § 30.02 (West 1989). After finding appellant
guilty of both offenses, the jury assessed punishment at confinement for twenty-five years for the
offense of attempted capital murder and ten years confinement and a fine of ten thousand dollars
for the offense of burglary of a habitation.

 Appellant urges thirteen points of error. The first four points of error challenge
the sufficiency of the evidence to support the convictions. In his fifth point of error, appellant
contends that his right to be free from double jeopardy was violated when he received multiple
punishments for the same offense. Complaint is made of the cumulative effect of improper
statements of the prosecutor in point of error eight. In his remaining points of error, appellant
asserts the court erred by: (6) allowing testimony concerning appellant's dreams; (7) overruling
appellant's objection to the prosecutor striking at appellant over his counsel's shoulders; (9)
refusing to grant appellant's requested instruction on mistake of fact; (10) refusing appellant's
requested instruction on reckless conduct; (11) overruling appellant's objection that the charge
included two ways of finding appellant guilty of attempted capital murder; (12) denying
appellant's motion that the State elect which way attempted capital murder would be charged; and
(13) submitting a charge that confused the jury and did not require an unanimous verdict. We will
overrule appellant's points of error and affirm the judgment of the trial court.

 The facts appear to be undisputed except for those portions of the evidence relevant
to the issues of appellant's intent to kill and consent for appellant to enter the home of his ex-wife
in Killeen. The twenty-two year marriage of appellant and Monika Scott ended in divorce in
October 1989. Appellant called Monika before she left for work on June 10, 1991, to determine
if she would be home after work that afternoon in order that he might pick up an old will. 
Monika told appellant that her boyfriend, Jay Hicks, was coming home with her in hope that
appellant would not come that day. In route to Monika's house that afternoon, appellant
purchased a five-shot, double action revolver. Appellant loaded the pistol with ".38 special plus
P jacketed hollow point" ammunition, described by Killeen Police Officer Thomas Kilmer as
"powerful" and "destructive" bullets.

 The fifteen-year-old son of the marriage, Glenn, answered the door after appellant
rang the doorbell numerous times. Glenn testified that he opened the door in order that his father
might enter. Appellant told Glenn that he had something for him and returned to the car. Glenn
went to his mother's room and told her "my father is here." Monika told Glenn "she didn't want
to speak to him and to tell him to leave." When appellant returned to the front door with a Wal-Mart bag, Glenn told him that he "couldn't come in" because "my mom didn't want to speak to
him." Appellant told Glenn to "shut-up," entered the house, removed something from the bag and
threw the empty bag on a table. When appellant started toward Monika's room, Glenn looked in
the bag and found a receipt for a gun and bullets. Glenn heard a sound like someone kicking on
a door. After telling his sister, Christine, that appellant had a gun, Glenn ran to a friend's house
to call the police.

 Monika testified that when she heard that appellant was at her house, she told Glenn
to tell him that she did not want to talk to him and for appellant to leave. Monika and Jay Hicks
locked themselves in Monika's room. Monika related that appellant started banging on the door
and she told him to "leave the house." Appellant said good-bye and in "a couple of minutes, I
heard a big bang and I looked and all of the wood from my door-frame inside my bedroom was
coming apart." Monika, who had been leaning against the doorframe when she was talking to
appellant, jumped back following the impact on the door and "then there was this succession of
shots."

 Christine, the twenty-year-old daughter of the broken marriage, heard what she
recognized as the lengthy ringing of the doorbell she had come to associate with appellant. She
did not go to the door because she did not want to see him. Christine testified she heard appellant
tell Glenn that he had something for him. When she heard the door open again, she heard Glenn
say, "Mom said she doesn't want you to come in, so you have to leave." Glenn came to her room
and told her, "Dad had a gun and to call the police." While she was on the telephone talking to
the police, appellant entered her room and told her "to get off the phone and get them [Monika
and Hicks] out of their room because he wanted to talk to them." After Christine concluded the
call, she left her bedroom and met appellant. Christine told appellant that she had called the
police to tell them he had a gun and that he needed to leave. Appellant became "hysterical,"
pulled out a gun and said, "I'm going to kill all of you. And then he pointed the gun at me, but
I pushed it down." Appellant ran back toward her mother's room and "I heard two shots." 
Christine ran toward the front door and "he [appellant] shot at me." Christine was pushing the
screendoor open when the shot was fired and "I felt a sharp pain." Christine looked back while
running toward a neighbor's house and saw appellant following her. The pain experienced by
Christine was attributed to splinters caused by the bullet hitting the door frame.

 Officer Kilmer testified that when he arrived at the Scott residence, he observed
a white female running from the front of the residence, "hysterical and you know, letting out quite
a yell of terror." Appellant was running in the direction of the girl. Kilmer "drew down on the
suspect" with his shotgun and ordered appellant to the ground. Killeen police officer Robert
Clemons testified that he found a bullet hole in the front doorjamb and saw four bullet holes "in
and around the door knob of the master bedroom." Two bullet holes were found in a bedroom
closet door.

 Appellant testified that Glenn did not refuse him admittance to the house and that
he was not told to leave until he was inside the house. When he called earlier on the day in
question, Monika told him that he could come to the house and pick up his will. Appellant related
that he purchased a gun on the way to Monika's house because "I wanted to go to a range and fire
with it." Appellant stated that he was going with his girlfriend Nora, "that's who I was going to
take out to help fire with it while I was trying to get my own self a little more experience with
pistols." Appellant denied trying to hurt anyone in the bedroom, stating his sole motive was to
shoot at the lock to gain entry to the bedroom. Appellant testified that as he was leaving the
house, he wanted to make sure that "there was no live ammunition in it going out to see the
police, and fired the gun, hoping that I did not hit her [Christine]." Appellant denied that he was
running after Christine when he left the house: "I walked out the door with both hands up."

 In his first four points of error, appellant asserts that the evidence is legally and
factually insufficient to support the convictions for attempted capital murder and burglary of a
habitation.

 When reviewing a challenge to the legal sufficiency of the evidence to support a
conviction, an appellate court must determine whether, viewing the evidence in the light most
favorable to the conviction, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Butler
v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1980). A reviewing court should not substitute
its determination of guilt for that of the fact finder unless it is found to be irrational or
unsupported by the evidence, such evidence being viewed under the standard set forth in Jackson. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). "[I]t is enough that the
conclusion of guilt is warranted by the combined and cumulative force of all the incriminating
circumstances." Brandley v. State, 691 S.W.2d 699, 703 (Tex. Crim. App. 1985). When making
a factual review of the sufficiency of the evidence, "The court should set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust." 
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd., untimely filed).

 Appellant urges the following factors negate the requisite element of intent to kill: 
(1) firing a gun five times at close range and failing to hit anyone; (2) failing to hit anyone despite
the fact that he held awards for marksmanship; and (3) failing to shoot Christine when he pointed
the gun at her and she pushed it away. In challenging the sufficiency of the evidence to support
the burglary of a habitation conviction, appellant urges that the State did not meet its burden of
proving that he entered the house without the effective consent of the owner. Appellant points
to evidence that Glenn failed to mention that he told appellant to leave the house in his statements
to the police on the day of the offense and later at a bond hearing. Appellant reasons that it is
unlikely that Glenn would have told him to leave the house after he had told Glenn that he was
going to the car to get something for him.

 It is undisputed that appellant purchased a gun and bullets on the way to Monika's
house. Appellant told Christine that he was going to kill all of them. Appellant was aware that
Monika and Hicks were in the bedroom when he fired four shots into the door with a gun loaded
with "powerful" and "destructive" bullets. Appellant's fifth shot hit the doorframe and sent
splinters into Christine's arm as she left the house. The jury, as the trier of the facts, was free
to reject appellant's testimony that he had no intent to kill Christine and Monika. Viewing the
evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have
found beyond a reasonable doubt that appellant intended to kill the alleged victims.

 Glenn testified that he told appellant that he could not enter the house when
appellant returned from the car. Both Monika and Christine testified that they heard Glenn tell
appellant that he could not enter. In Villanueva v. State, 711 S.W.2d 739, 740 (Tex. App.--San
Antonio 1986), pet. ref'd., 725 S.W.2d 244 (Tex. Crim. App. 1987), cited by appellant, the
alleged owner was not at home and the defendant entered the house with the occupants' consent. 
The court held that ownership is not restricted to those persons who have title to property, but can
include those in possession. Id. at 740. Viewing the evidence in the instant cause in the light
most favorable to the verdict, we hold that a rational jury could have found beyond a reasonable
doubt that appellant entered the house without the effective consent of the owner. 

 With respect to appellant's challenge to the factual sufficiency of the evidence, we
hold, after reviewing all of the testimony of defense witnesses and the existence of alternative
hypotheses, that the jury's verdict on both offenses is not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. See Stone, 823 S.W.2d at 381. Appellant's
first four points of error are overruled.

 In his fifth point of error, appellant asserts that he was subjected to double jeopardy
when he received multiple punishments for the same offense. Appellant urges that the court's
action in assessing punishment for the offenses of attempted capital murder and burglary of a
habitation violated those provisions of the United States Constitution and the Texas Constitution
providing no person shall "be subject for the same offense to be twice put in jeopardy of life or
limb." See U.S. Const., amend. V; Tex. Const. art. I, § 14.

 In the first paragraph of count I of the indictment, appellant was charged with
attempting to cause the death of Monika Scott and Christine Scott during the same criminal
transaction. Penal Code § 19.03(a)(6)(A). In the second paragraph of count I, appellant was
charged with attempting to cause the death of Christine Scott in the course of attempting to
commit and committing the felony offense of burglary of a habitation. Penal Code § 19.03(a)(2). 
In count II of the indictment, appellant was charged with burglary of a habitation by entering a
habitation without the effective consent of Monika Scott, the owner, and then and there attempting
to commit murder and committing aggravated assault. Penal Code § 30.02(a)(3).

 The trial court submitted both theories of attempted capital murder to the jury. The
jury returned a verdict of guilty of attempted capital murder as charged in the indictment without
specifying the theory on which the verdict was based. The court also submitted a charge on the
offense of burglary of a habitation on all theories alleged in the indictment and the jury returned
a general verdict of guilty.

 Appellant urges that in light of the general verdict, it is impossible to tell whether
appellant was punished twice for the same offense. Appellant contends, if the jury found him
guilty of capital murder by attempting to kill Christine in the course of the burglary that
conviction would have required proof of the same elements that are required to prove burglary
of a habitation.

 The Double Jeopardy Clause protects against multiple punishments for the same
offense. In addition, it prohibits successive prosecutions for the same offense after acquittal or
conviction. Since appellant was subjected to only one trial, the issue in the instant cause is
whether appellant was subjected to multiple punishments for the same offense.

 In Blockburger v. United States, 284 U.S. 299 (1932), the court set the standard
for determining whether the legislature intended multiple punishments in cases in which the same
conduct violates two separate penal statutes:



The applicable rule is that, where the same act or transaction constitutes a violation
of two distinct statutory provisions, the test to be applied to determine whether
there are two offenses or only one is whether each provision requires proof of an
additional fact which the other does not. . . . "A single act may be an offense
against two statutes; and if each statute requires proof of an additional fact which
the other does not, an acquittal or conviction under either statute does not exempt
the defendant from prosecution under the other."



Id. at 304 (citations omitted). The Supreme Court concluded that double jeopardy does not
prevent the imposition of dual convictions and sentences if each offense involved proof of a fact
which the other did not.

 In Cervantes v. State, 815 S.W.2d 569 (Tex. Crim. App. 1991), the defendant, in
a single trial, was convicted of attempted capital murder and aggravated robbery. The court
concluded that double jeopardy did not preclude the defendant's convictions for both offenses,
even though the State was required to prove the aggravated robbery in both counts, since each
statutory offense requires proof of a fact the other does not. The Cervantes court further noted
that when cumulative sentences are imposed in a single trial, the Double Jeopardy Clause does
no more than prevent the sentencing court from prescribing greater punishment than the legislature
intended. "Legislatures, not courts, prescribe the scope of punishments." Id. at 574; see Missouri
v. Hunter, 459 U.S. 359 (1983). The Double Jeopardy Clause "does not negate the legislature's
ability to authorize multiple punishments." Cervantes, 815 S.W.2d at 573.

 In the instant cause, the two convictions pass the Blockburger test even though the
State was required to prove the burglary of a habitation in order to authorize a conviction for
attempted capital murder under one of the theories alleged in the indictment. To convict appellant
of attempted capital murder, the State was required to prove that appellant intentionally or
knowingly intended to cause the death of the victim. Penal Code §§ 15.01(a), 19.03(a)(2). To
convict appellant of burglary of a habitation, the State was required to prove that appellant entered
the habitation without the consent of the owner. Penal Code § 30.02(a)(3). Because each offense
has a unique element, they are not the same under Blockburger and appellant's conviction for both
offenses at a single trial did not constitute double jeopardy. Appellant's fifth point of error is
overruled.

 In his sixth point of error, appellant asserts that the trial court erred in allowing,
over objection, testimony concerning appellant's dreams. Monika testified that on several
occasions appellant told her that in his dreams "he was always killing me and killing himself." 
Christine testified that during her last contact with appellant before the day in question, appellant
told her that "he had a dream that he killed mom and that he killed himself."

 Appellant directs our attention to the opinion testimony of psychologist Dr. Charles
Pierce who stated that telling someone of a dream "in general that is not something they are going
to discuss with people who may be intended victims." However, Dr. Pierce related that he was
not an expert in dream analysis and he was not "sure if these thoughts that the defendant had been
having and communicating to his family could be characterized as dreams."

 Appellant urges that any probative value of the testimony relating to dreams was
substantially outweighed by the danger of unfair prejudice and confusing the jury. See Tex. R.
Crim. Evid. 403. In reviewing the trial court's action in admitting testimony, "appellate courts
uphold the trial court's ruling on appeal absent an 'abuse of discretion.' That is to say, as long
as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate
court will not intercede." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 
In determining whether the probative value of the complained-of testimony is outweighed by the
danger of unfair prejudice, we note that appellant's dreams are not the only evidence on the issue
of appellant's intent to kill. Christine testified that immediately prior to appellant's action in firing
the gun, appellant told her, "I'm going to kill all of you." 

 "'Relevant evidence' means evidence having any tendency to make the existence
of any fact that is of consequence to the determination of the action more probable or less
probable then it would be without the evidence." Tex. R. Crim. Evid. 401. The definition of
"relevance" in Rule 401 "is necessarily a broad one." Montgomery, 810 S.W.2d at 391. We hold
that the trial court did not abuse its discretion in admitting the complained-of evidence, and
appellant's sixth point of error is overruled.

 In his seventh point of error, appellant asserts that the prosecutor's action in
striking at appellant over the shoulders of his counsel resulted in an unfair trial. Appellant
complains of thirteen instances of alleged misconduct. The first four relate to conduct of the
prosecutor during the presentation of evidence. In two instances, the court sustained appellant's
objections and instructed the jury to disregard. Harm caused by an improper remark can generally
be cured by "an appropriate instruction to disregard, unless the remark is so inflammatory that
its prejudicial effect cannot be effectively removed." Caldwell v. State, 818 S.W.2d 790, 801
(Tex. Crim. App. 1991). Assuming that the prosecutor's remarks were improper, we find that
the comments were not so objectionable that they could not be cured by an instruction to
disregard. In one of the two remaining instances, appellant did not voice an objection. No ruling
was made by the trial court on appellant's objection on the other occasion. A defendant is
required to pursue his objection until he receives an adverse ruling to preserve his point of error
for review. See Ramos v. State, 819 S.W.2d 939, 942 (Tex. App.--Corpus Christi 1991, pet.
ref'd); Tex. R. App. P. 52. Appellant made no objection to any of the nine jury arguments about
which he complains on appeal. Appellant's failure to comply with Rule 52 preserves nothing for
review. Appellant's seventh point of error is overruled.

 In his eighth point of error, appellant contends that despite the fact that he failed
to object to any of the nine arguments, the cumulative effect of the prosecutor's statements
resulted in harm that could not be cured by an instruction. Although, appellant, by failing to
make an objection and obtain a ruling thereon, did not preserve error, we may nonetheless
consider his complaint if the prosecutor's arguments constituted fundamental error. Prosecutorial
arguments may constitute fundamental error when an instruction by the court to disregard would
not cure the harmfulness of the arguments. See Romo v. State, 631 S.W.2d 504, 505 (Tex. Crim.
App. 1982).

 In Salazar v. State, 716 S.W.2d 733, 736-37 (Tex. App.--Corpus Christi 1986, pet.
ref'd), the court found the prosecutor's comments and questions to be reprehensible, but
concluded they did not constitute reversible error in the absence of a proper objection. In Salazar,
counsel for defendant testified. On cross-examination, the prosecutor asked if defense counsel
were a witness "or are you just lying to the jury or what?" The prosecutor then asked if counsel
was known by "Nate the Snake." In closing argument, the prosecutor said that defense counsel
had "obstructed justice by telling the defendant to lower his shirt sleeves during the lineup." 
Without setting forth each of the nine arguments that form the basis of appellant's complaint, a
careful review of the record reflects that the prosecutor's arguments do not reach the level of
impropriety of those found not to constitute fundamental error in Salazar. Appellant's eighth
point of error is overruled.

 Appellant combines his ninth and tenth points of error for discussion. In his ninth
point of error, appellant contends that the trial court erred in refusing his requested instruction on
mistake of fact in its charge to the jury. In his tenth point of error, appellant complains of the
court's failure to include his requested instruction on reckless conduct in the jury charge.

 Appellant's brief fails to include "a fair, condensed statement pertinent to such
points, with reference to the pages in the record where the same may be found." Tex. R. App.
P. 74(f)(1). Appellant's brief contains his requested charges and an abstract discussion of the law. 
Appellant's only reference to facts under the ninth point of error is "if the jury believed that
appellant had a mistake of fact about consent to enter the habitation, then they would have been
required under law to acquit him of burglary." No further reference to facts is made and no pages
in the record are identified where evidence may be found to raise the issue. The only reference
to evidence in the tenth point of error is "The evidence indicated that appellant fired a wild shot
that hit the door jam." Again, there is no reference to pages where the evidence may be found
or discussion of how such evidence may have raised the issue of reckless conduct. While we
recognize that briefing rules are to be construed liberally, we find that appellant's brief is not in
"substantial compliance" in pointing to evidence to support the requested instructions. See Tex.
R. App. P. 74(p).

 Assuming, arguendo, that points of error nine and ten are properly before us, we
find no merit in either contention. "It is a defense to prosecution that the actor through mistake
formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of
culpability required for commission of the offense." Tex. Penal Code Ann. § 8.02(a) (West
1974). In Hill v. State, 765 S.W.2d 794, 796-97 (Tex. Crim. App. 1989), the court held that the
defendant's (an osteopathic physician) testimony that he believed he was dispensing the drug to
a person for a valid medical purpose entitled the defendant to an instruction on mistake of fact
since such testimony would have negated the culpability essential to the offense of commercially
dispensing a controlled substance without a valid medical purpose. In Beggs v. State, 597 S.W.2d
375 (Tex. Crim. App. 1980), the court held that the defendant's testimony that she mistakenly
believed that the temperature of the bath water, which scalded the child, was normal entitled the
defendant to an instruction on mistake of fact. The Beggs court found that the defendant's
testimony was sufficient to show a reasonable belief about a matter of fact that would negate an
essential culpable mental state of the offense. Id. at 378.

 In the instant cause, unlike Hill and Beggs, there is no evidence that appellant had
a reasonable but mistaken belief that would negate the element of entry without the effective
consent of the owner. On the contrary, the evidence is limited to a conflict of testimony about
whether Glenn told appellant that he could not enter the house. Point of error nine is overruled.

 Relevant to appellant's tenth point of error, Tex. Penal Code Ann. § 22.05 (West
1989) defines reckless conduct:



(a) A person commits an offense if he recklessly engages in conduct that places
another in imminent danger of serious bodily injury.


(b) Recklessness and danger are presumed if the actor knowingly pointed a
firearm at or in the direction of another whether or not the actor believed
the firearm to be loaded.



In Gallegos v. State, 548 S.W.2d 50 (Tex. Crim. App. 1977), the court held that "Section 22.05
applies to those acts that fall short of injuring another." See also Carter v. State, 678 S.W.2d
155, 158 (Tex. App.--Beaumont 1984, no pet.) It appears that appellant relies on testimony that
his shot hit the doorjamb to raise the issue of reckless conduct. Christine's testimony reflects that
when appellant shot at her as she was running out the front door, she felt "a sharp pain" and
thought she was shot, "it broke the skin and I had a bruise for about a week." It was later
concluded that splinters caused by the bullet hitting the front door caused the injury. Appellant's
deliberate conduct in chasing Christine with gun in hand clearly resulted in her injury. The
evidence does not raise the issue of reckless conduct. Appellant's tenth point of error is
overruled.

 Appellant briefs his eleventh and twelfth points of error as if they were a single
point of error. Appellant complains of the court's action in overruling his objection that the
charge included two ways of finding him guilty of attempted capital murder, and in denying his
motion that the State elect which theory of attempted capital murder would be proved. Appellant
voiced the following argument in support of his objection and motion to elect in the trial court:



We would urge the Court that to submit to the jury that if they find basically the
charge in paragraph one true, or they find the charge in paragraph two true, then
they should find the Defendant guilty of attempted capital murder would allow
some part of a jury who believed one and not the other, to agree with another part
of a jury that had a completely contrary view to reach a verdict of guilty without
unanimity as to which charge they were finding guilty of. And it pretty well
suggests that the jury can convict this man of capital murder without agreeing on
what he's guilty of, if anything.



 The indictment alleged two methods of committing attempted capital murder
authorized by statute, and the two theories were submitted alternatively in the court's charge. In
Atuesta v. State 788 S.W.2d 382 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd), the court
rejected a contention similar to the one advanced by appellant. The Atuesta court stated:



Appellant next contends that the jury charge allowed a conviction based on several
grounds, some of which were not supported by the evidence. He argues that some
of the jurors could have believed that appellant had not constructively delivered the
cocaine, the charge upon which he alleges the State based its prosecution, "but
somehow thought he delivered [it] by some other means, and based their vote" on
that belief.


Contrary to appellant's contention, the State may allege different methods of
committing an offense, and each of these methods may be submitted alternatively
in the jury charge. Where a general verdict is returned, and the evidence is
sufficient to support a finding under any of the counts submitted, no error is
shown.



Id. at 385 (citations omitted). In the instant cause, the evidence is sufficient to support a finding
under either of the two paragraphs submitted. See Kitchens v. State, 823 S.W.2d 256, 258 (Tex.
Crim. App. 1991). Appellant's eleventh and twelfth points of error are overruled.

 In his thirteenth point of error, appellant asserts the court erred when it submitted
a charge that confused the jury and did not require the jury to reach an unanimous verdict. 
During its deliberations, the jury sent a note to the court, asking: "Does it make a difference
between murder 1st paragraph one or paragraph two? Must there be a consensus on par #1 or 2?" 
The trial court replied in writing, "In response to your note inquiring about the difference between
Paragraph One and Paragraph Two, I can instruct you no further in this regard. I refer you to
the charge. Please continue your deliberations."

 Appellant objected to the court's instruction as "confusing" and "did not require
an unanimous verdict." In a remarkably similar cause, Rooney v. State, 815 S.W.2d 903 (Tex.
App.--Fort Worth 1991, no pet.), the trial court submitted a charge on alternative methods of
committing murder with a single verdict form. The jury's note to the court inquired if there had
to be a consensus on one or the other method. The Rooney court held it was not necessary for
the jury to designate under which theory it found the defendant guilty. Id. at 905-06.

 In the instant cause the jury was required to find appellant guilty beyond a
reasonable doubt under either theory. The evidence was sufficient to support a finding under
either of the theories submitted. See Kitchens, 823 S.W.2d at 258. Appellant's thirteenth point
of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Powers, Kidd and Davis*]

Affirmed

Filed: August 25, 1993

[Publish]













* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).