Queen v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00738-CR







Joseph Queen, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0954979, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING







 Ernest Saldana was robbed and beaten to death in his Austin apartment on November 3,
1994. Based on this incident, a jury convicted appellant of capital murder, aggravated robbery, and
engaging in organized criminal activity. Tex. Penal Code Ann. §§ 19.03(a)(2), 29.03(a)(1) (West 1994),
§ 71.02(a)(1) (West Supp. 1997). (1) The State having waived the death penalty, the district court assessed
appellant's punishment for capital murder at imprisonment for life. Tex. Code Crim. Proc. Ann. art.
37.071, § 1 (West Supp. 1997). The court assessed punishment at imprisonment for fifty years for each
of the other offenses.

 David Ruiz, Jr. testified that he, appellant, Chris Paz, and Robert Ramirez were "hanging
around" a grocery store when appellant noticed Saldana leave the store with a sum of money. The four
men decided to rob Saldana and, to that end, followed him across the street to his apartment. To gain
admission into the apartment, they told Saldana they had crack cocaine and offered to share it with him. 
Once inside, Paz struck Saldana in the face, causing him to fall onto a bed. Appellant, Ramirez, and Ruiz
immediately joined in the attack. Saldana fell to the floor as the men continued to pummel him. During the
assault, appellant and Ramirez went through Saldana's pockets. After finding money, appellant and
Ramirez left the apartment but Paz and Ruiz remained and continued the assault. Paz began to stomp and
kick Saldana's head. When Paz finally stopped beating Saldana, he and Ruiz searched the apartment. 
They left after finding $100. The medical examiner testified that Saldana's body was covered by numerous
bruises and abrasions, and that his death was caused by intracranial bleeding resulting from multiple blows
to the head.

 In his written statements to the police and in his trial testimony, appellant admitted going
to Saldana's apartment but denied being part of any advance plan to commit a robbery. Appellant
conceded, however, that he struck Saldana and searched his pockets after the assault began. Appellant
claimed he did not intend to harm Saldana and did not believe at the time that Paz intended to do so. 
Appellant said that he and Ramirez fled the apartment with approximately $175.



Double Jeopardy


 The indictment contained four counts accusing appellant of capital murder (count one),
murder (count two), aggravated robbery with serious bodily injury (count three, paragraph one),
aggravated robbery of a disabled person (count three, paragraph two), and engaging in organized criminal
activity (count four). Over appellant's objection that the State should be required to elect a single count,
all counts were submitted to the jury. The jury convicted appellant on counts one, three (paragraph one),
and four. (2)

 In points of error one and two, appellant contends the double jeopardy clauses of the
Texas and United States constitutions were violated when he was adjudged guilty and punished for three
offenses arising out of the same transaction. U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14. 
Appellant does not separately argue his state and federal constitutional claims, and proffers no argument
or authority to support a holding that, in the context of this cause, the Texas Constitution's double jeopardy
clause differs meaningfully from the Fifth Amendment. We therefore overrule point of error one, the state
double jeopardy claim, and will conduct our analysis under the federal constitution. Granger v. State, 850
S.W.2d 513, 515 n.6 (Tex. Crim. App. 1993).

 The Fifth Amendment guarantee against double jeopardy embodies three protections:
against a second prosecution for the same offense following conviction, against a second prosecution for
the same offense following acquittal, and against multiple punishments for the same offense. Illinois v.
Vitale, 447 U.S. 410, 415 (1980); Cervantes v. State, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). 
Appellant invokes the third of these protections. Appellant did not raise his double jeopardy claim below,
but under the circumstances presented, the alleged violation may be raised for the first time on appeal. 
Shaffer v. State, 477 S.W.2d 873, 876 (Tex. Crim. App. 1971); Casey v. State, 828 S.W.2d 214, 216
(Tex. App.--Amarillo 1992, no pet.).

 The double jeopardy guarantee against multiple punishments for the same offense does no
more than prevent the sentencing court from prescribing greater punishment than the legislature intended. 
Missouri v. Hunter, 459 U.S. 359, 366 (1983); Ex parte Kopecky, 821 S.W.2d 957, 959 (Tex. Crim.
App. 1992). When the same conduct violates more than one distinct penal statute and each statute requires
proof of a fact that the other does not, it is presumed that the two offenses are not the same and that the
legislature intended to authorize multiple punishments. Hunter, 459 U.S. at 366; Blockburger v. United
States, 284 U.S. 299, 304 (1932). Conversely, if all the elements of one statutory offense are contained
within the other, it is presumed that the two offenses are the same and that the legislature did not intend to
authorize punishment for both. Whalen v. United States, 445 U.S. 684, 693-94 (1980).

 The Texas Court of Criminal Appeals recently observed that "the core meaning of
Blockburger is now evidently more in dispute than ever before," and that "[t]he only proposition upon
which everyone seems to agree is that greater inclusive and lesser included offenses are the same for
jeopardy purposes." Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994). The court went
on:



 In Texas, an offense is considered to be included within another if, among other
things, "it is established by proof of the same or less than all the facts required to establish
the commission of the offense charged[.]" Tex. Code Crim. Proc. Ann. art. 37.09(1)
(West 1981). Our statute law thus describes includedness in much the same way
Blockburger describes sameness. Yet we have long considered more than merely
statutory elements to be relevant in this connection. . . . We likewise think it reasonably
clear from the various opinions in Dixon that the essential elements relevant to a jeopardy
inquiry [under Blockburger] are those of the charging instrument, not of the penal statute
itself.



Id. (discussing United States v. Dixon, 509 U.S. 688 (1993)). (3)



1.  Capital murder and aggravated robbery.

 Following Parrish, we refer to the indictment to determine the essential elements relevant
to the jeopardy inquiry. Count one of the indictment alleged that


 

Robert Ramirez and Joseph Queen [appellant] . . . in the course of committing and
attempting to commit robbery of Ernest Saldana did then and there intentionally commit
murder by causing the death of an individual, Ernest Saldana, by striking and kicking and
stomping Ernest Saldana with hand and foot.



This count alleged the offense of capital murder in the course of committing or attempting to commit
robbery. See Penal Code § 19.03(a)(2). For the purpose of double jeopardy analysis, this is a separate
and distinct offense. Whalen, 445 U.S. at 693-94.

 Count three, paragraph one alleged that



Robert Ramirez and Joseph Queen [appellant] . . . while in the course of committing theft
of property and with intent to obtain and maintain control of the property, intentionally,
knowingly and recklessly cause[d] serious bodily injury to another person, namely: Ernest
Saldana by striking and kicking and stomping Ernest Saldana.



This count alleged aggravated robbery with serious bodily injury. See Penal Code § 29.03 (a)(1).

 The allegation in count one that appellant and Ramirez were "in the course of committing
. . . robbery" (4) incorporated the allegation in count three, paragraph one that they were "in the course of
committing theft of property and with intent to obtain and maintain control of the property." See Penal
Code § 29.02(a). The allegation in count one that Ramirez and appellant intentionally murdered Saldana
incorporated the allegation in count three, paragraph one that they "intentionally, knowingly, and recklessly
cause[d] serious bodily injury" to Saldana. (Emphasis added.) See Penal Code § 1.07(a)(46); Tex. Code
Crim. Proc. Ann. art. 37.09(3) (West 1981). Thus, every element of the alleged aggravated robbery with
serious bodily injury, including death, was included within the alleged capital murder in the course of
robbery, and it was impossible for the State to prove the latter offense without also proving the former. 
Or, to phrase it differently, the allegations of aggravated robbery required no proof beyond that required
for the allegations of capital murder.

 The State relies on two opinions to justify appellant's convictions for both capital murder
and aggravated robbery. See Cervantes v. State, 815 S.W.2d 569 (Tex. Crim. App. 1991); Scott v.
State, 861 S.W.2d 440 (Tex. App.--Austin 1993, no pet.). In Cervantes the defendant shot a police
officer during the course of an armed robbery and was subsequently tried and convicted for both
attempted capital murder and aggravated robbery. The court of criminal appeals rejected the defendant's
contention that he was being twice punished for the same offense. However, unlike the cause before us,
the defendant in Cervantes was not indicted for attempted capital murder in the course of committing
robbery. Instead, the indictment alleged that the intended murder victim was a police officer acting in the
lawful discharge of an official duty. See Penal Code § 19.03(a)(1). Thus, the essential elements of the
attempted capital murder did not incorporate the elements of robbery. While the State proved the robbery
in order to prove that the officer was acting in the course of an official duty, this was merely an evidentiary
fact and the two offenses were not the same for double jeopardy purposes. Cervantes, 815 S.W.2d at
574.

 In Scott, the defendant entered his former wife's home without consent and attempted to
shoot both his wife and their daughter. The defendant was indicted for attempted capital murder of his wife
and daughter in the course of the same transaction, attempted capital murder of his daughter in the course
of committing or attempting to commit burglary of a habitation, and burglary of a habitation by entering and
attempting to commit murder or committing aggravated assault. See Penal Code §§ 19.03(a)(2),
19.03(a)(7)(A), 30.02(a)(3). Both theories of attempted capital murder were submitted to the jury and
the jury returned a general verdict of guilty without specifying the theory of the offense on which it was
based. The defendant was also convicted of burglary of a habitation. On appeal, the defendant contended
that, if the jury found him guilty of attempted capital murder in the course of committing burglary, the
additional conviction for burglary constituted an unconstitutional double punishment for the same offense.

 This Court overruled Scott's contention on the ground that each offense had a unique
element. Scott, 861 S.W.2d at 446. Because the indictment alleged that the defendant attempted to kill
his daughter while committing or attempting to commit burglary, it was possible to prove the alleged
attempted capital murder without proving entry and therefore without proving burglary. And because the
indictment alleged that the defendant entered the habitation and committed attempted murder or
aggravated assault, it was possible to prove the alleged burglary of a habitation without proving an intent
to kill and therefore without proving attempted capital murder. The two offenses each had a unique element
and passed the Blockburger test.

 In this cause, because all elements of aggravated robbery were included within capital
murder as the two offenses were alleged in the indictment, it is presumed that the two offenses were the
same for double jeopardy purposes. See Whalen, 445 U.S. at 693-94 (rape and felony murder in course
of committing rape were same offense); Harris v. Oklahoma, 433 U.S. 682 (1977) (robbery with firearm
and felony murder in course of committing robbery were same offense); Brown v. Ohio, 432 U.S. 161,
168 (1977) (joyriding and auto theft were same offense). Because there is nothing to suggest that the
legislature clearly intended to authorize punishment for both offenses, we hold that appellant's conviction
and punishment for both capital murder and aggravated robbery violated the multiple punishment
component of the Fifth Amendment double jeopardy clause.

 Although appellant's capital murder and aggravated robbery sentences are being served
concurrently, the double jeopardy violation cannot be considered harmless because a second conviction
may have adverse collateral consequences apart from the concurrent sentence. See Ball v. United States,
470 U.S. 856, 864-65 (1985). Because capital murder is a more serious offense than aggravated robbery,
the judgment convicting appellant of the latter offense will be set aside. Ex parte Pena, 820 S.W.2d 806,
808-09 (1991). To this extent, appellant's second point of error is sustained. (5)



2.  Capital murder and engaging in organized criminal activity.

 We again refer to the indictment to determine the essential elements of engaging in
organized criminal activity. Parrish, 869 S.W.2d at 354. Count four of the indictment alleged that 



Robert Ramirez and Joseph Queen [appellant] and Chris Paz . . . with intent to establish,
maintain and participate in a combination consisting of three or more of said defendant, and
in the profits of said combination, did then and there commit the offense of robbery, and
did then and there agree among themselves and with each other, to engage in conduct
constituting said offense, and in pursuance to such agreement the defendants performed
one or more overt acts, namely: Joseph Queen pulled on Ernest Saldana's leg and hit
Ernest Saldana and Robert Ramirez took money from Ernest Saldana and Chris Paz hit
and kicked and stomped Ernest Saldana.



Penal Code § 71.02(a)(1). When the offense alleged in count four is compared with the offense alleged
in count one, it is obvious that each contains an element not found in the other. In order to convict appellant
of capital murder, it was necessary to prove that Saldana was killed. Saldana's death was not an essential
element of organized criminal activity as alleged in count four. In order to convict appellant of engaging in
organized criminal activity, it was necessary to prove that he intended to establish, maintain, or participate
in a combination. Such intent was not an element of capital murder as alleged in count one.

 Appellant asserts that the capital murder and organized criminal activity offenses were the
same for double jeopardy purposes because, under the court's charge, his guilt of capital murder rested
on a finding that he was a party to a conspiracy to commit robbery. The court instructed the jury to convict
appellant of capital murder if it found beyond a reasonable doubt that



the defendant, Joseph Queen, entered into a conspiracy with Chris Paz to commit the
felony offense of robbery, and that . . . in the attempt to carry out this agreement . . . Chris
Paz did then and there intentionally kill Ernest Saldana by striking or kicking or stomping
Ernest Saldana with hand or foot . . . and that such offense was committed in furtherance
of the unlawful purpose to commit robbery and was an offense that should have been
anticipated as a result of the carrying out of the agreement.



See Penal Code § 7.02(b) (criminal responsibility for conduct of coconspirator). Appellant argues that
because of this conspiracy element, engaging in organized criminal activity was a lesser included offense
of capital murder as the two offenses were presented to the jury in the district court's charge.

 Appellant relies on Rutledge v. United States, 134 L. Ed. 2d 419 (1996). The question
in Rutledge was whether a defendant could be punished for both engaging in a continuing criminal
enterprise to violate the federal controlled substances act and conspiring to violate that act. See 21
U.S.C.A. §§ 846, 848 (West 1996). The Supreme Court found that proving a conspiracy under section
846 did not require proof of any fact that was not also part of a continuing criminal enterprise under section
848, and therefore held that the two offenses were the same for double jeopardy purposes.

 Because Rutledge involved the interpretation of federal statutes, its holding is not
dispositive of appellant's contention in this cause. Moreover, Rutledge does not support appellant's
contention that, when conducting a Blockburger analysis, we must examine the jury charge to determine
the elements of an offense. We are aware of no authority stating that the trial court's jury charge is a
relevant consideration under Blockburger. 

 Moreover, even if it is appropriate to compare application paragraphs in the court's charge
when applying Blockburger, a comparison of the application paragraphs in this cause does not lead to the
conclusion that the capital murder and organized criminal activity offenses were the same for double
jeopardy purposes. The court instructed the jury to convict appellant of engaging in organized criminal
activity if it found beyond a reasonable doubt that



the defendant, Joseph Queen . . . with intent to establish, maintain or participate in a
combination consisting of himself and . . . Chris Paz and Robert Ramirez, or in the profits
of said combination . . . did then and there commit the offense of robbery, and did then and
there agree with one or more members of such combination . . . to engage in conduct
constituting the offense of robbery; and in pursuance of said agreement . . . Joseph Queen,
and one or more of the aforesaid other members of the combination . . . each performed
one or more overt acts . . . namely: Joseph Queen pulled on Ernest Saldana's leg or hit
Ernest Saldana, and Robert Ramirez took money from Ernest Saldana, and Chris Paz hit
or kicked or stomped Ernest Saldana.



Assuming without deciding that a "combination" under section 71.02(a) is the same as a "conspiracy" under
section 7.02(b), the charge required proof that appellant committed an overt act in order to convict him
of engaging in organized criminal activity. Proof that appellant committed an overt act was not required by
the capital murder application paragraph. On the other hand, the court's charge authorized appellant's
conviction as a party to the capital murder only if the jury found that Saldana's murder should have been
anticipated as a result of carrying out the conspiracy. The organized criminal activity charge did not require
proof of Saldana's murder, much less that it should have been anticipated by the parties to the combination.

 As enacted by the legislature, as alleged by the State in the indictment, and as charged by
the district court, the offenses of capital murder and engaging in organized criminal activity each contained
at least one unique element. Therefore, it is presumed that the two offenses were not the same for double
jeopardy purposes. Blockburger, 284 U.S. at 304; Parrish, 869 S.W.2d at 354. Moreover, this Court
has held that the express language of the organized criminal activity statute evinces the legislature's intent
to allow punishment for both engaging in organized criminal activity and the underlying overt criminal
offense. Reina v. State, No. 3-95-514-CR, slip op. at 11-12 (Tex. App--Austin Feb. 27, 1996, no pet.
h.). Accordingly, appellant's second point of error is overruled.



Other Points of Error


 In his third point of error, appellant contends the evidence does not legally support the
capital murder conviction because the State failed to prove that Saldana's murder should have been
anticipated as a result of carrying out the robbery conspiracy. See Boozer v. State, 717 S.W.2d 608,
611-12 (Tex. Crim. App. 1984); Benson v. State, 661 S.W.2d 708, 714-15 (Tex. Crim. App. 1983)
(opinion on second motion for rehearing) (sufficiency of evidence measured against court's jury charge). 
To decide this question, we must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found this element of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The jury is the exclusive
judge of the credibility of the witnesses and the weight to be given their testimony, and may accept or reject
all or any part of the evidence. Miller v. State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.).

 Saldana was in a serious automobile accident in 1980. Brain damage suffered in that
accident left him mentally impaired. In addition, Saldana experienced chronic back pain, walked with a
pronounced limp, and had limited mobility. He had difficulty breathing and tired easily. Saldana's physical
limitations were obvious to all who saw him, and the jury could rationally infer that appellant and his co-conspirators knew of them when they planned the robbery.

 In contrast to Saldana, the four assailants were healthy young men between the ages of
fifteen and twenty. Austin police officer John Colunga testified that Paz, the person who inflicted the fatal
blows to Saldana's head, had a reputation in the community for being violent. At the time of the murder,
appellant had known Paz for about two months, during which time he had "hung out" with him numerous
times. Appellant knew that Paz was a member of a street gang named the East Grand Barrio and that this
gang often fought with other gangs.

 After tricking Saldana into allowing them into his apartment, the four men immediately
attacked him in what the State accurately describes in its brief as "wolf-pack style." Although appellant was
the oldest and largest of the four conspirators, he did not attempt to stop the assault on Saldana. Appellant
testified that he thought the others would follow him when he left the apartment with the money found in
Saldana's pocket, but conceded that Paz and Ruiz were continuing to beat Saldana when he and Ramirez
left.

 As appellant correctly points out, Ruiz testified that none of the conspirators mentioned
killing or injuring Saldana prior to the attack and there is no direct evidence that the attack on Saldana was
premeditated. It was not necessary, however, for the State to prove that the murder was planned or even
that appellant foresaw it. The State had only to prove that the murder should have been anticipated as a
result of the carrying out of the agreement. Considering the gross disparities in strength and stamina
between the four conspirators and their intended victim, Paz's reputation for violence, and the viciousness
of the attack on Saldana, we believe the jury could rationally conclude beyond a reasonable doubt that
murder was an offense appellant should have anticipated as a result of carrying out the agreement to commit
robbery. Point of error three is overruled.

 Finally, appellant complains that Officer Colunga's testimony regarding Paz's reputation was
irrelevant and should not have been admitted. Evidence is relevant if it has any tendency to make the
existence of any consequential fact more or less probable than it would be without the evidence. Tex. R.
Crim. Evid. 401. The State offered the testimony as a circumstance tending to show that appellant should
have anticipated Saldana's murder. Appellant argues that the evidence was irrelevant to that issue because
the State failed to show that appellant was familiar with Paz's reputation.

 Questions of relevance should be left largely to the trial court, and that court's determination
will not be disturbed on appeal absent a clear showing of an abuse of discretion. Moreno v. State, 858
S.W.2d 453, 463 (Tex. Crim. App. 1991). While there was no direct evidence that appellant was familiar
with Paz's personal reputation for violence, appellant was shown to have associated with Paz for two
months and admitted knowing that Paz was a member of a street gang with a reputation for violence. We
believe the jury could rationally infer from this evidence that appellant knew Paz's personal reputation. The
district court did not abuse its discretion by overruling appellant's objection to the relevance of Colunga's
testimony. Point of error four is overruled.



Conclusion


 The district court prepared three judgments, one for each of the offenses for which
appellant was convicted. The judgment of conviction for aggravated robbery is reversed and count three,
paragraph one of the indictment is ordered dismissed. The judgments of conviction for capital murder and
engaging in organized criminal activity are affirmed.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed in Part; Reversed and Dismissed in Part

Filed: February 27, 1997

Publish

1.   All subsequent references to the Penal Code are to Tex. Penal Code Ann. (West 1994)
unless otherwise indicated. The 1995 amendment to section 71.02(a) is irrelevant to this cause.
2.   The murder and capital murder counts, and the two theories of aggravated robbery, were
submitted in the alternative. Having found appellant guilty of capital murder and aggravated
robbery with serious bodily injury, the jury did not consider whether appellant was guilty of
murder or aggravated robbery of a disabled person. The court's charge also included an
instruction on robbery as a lesser included offense, conditioned on the jury finding appellant not
guilty of aggravated robbery.
3.   The core meaning of article 37.09(1) is hardly less disputed than the core meaning of
Blockburger. Compare, e.g., Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982)
(robbery was lesser included offense of capital murder) with Woodkins v. State, 542 S.W.2d 855, 858
(Tex. Crim. App. 1976) (robbery was not lesser included offense of capital murder); and Campbell v.
State, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978) (theft was lesser included offense of aggravated
robbery) with Jacob v. State, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995) (aggravated assault was
not lesser included offense of burglary with intent to commit aggravated assault).
4.   It was impossible for appellant and Ramirez to murder Saldana in the course of attempting
to rob him and this portion of the first count was a nullity. Robbery is an assault in the course of
committing theft with intent to obtain or maintain control of the property. Penal Code § 29.02(a). 
Attempted robbery is an act, committed under the requisite circumstances and with the requisite intent, that
tends but fails to effect the assault. Penal Code § 15.01(a).
5.   Given this result, we need not address appellant's contention that the convictions for
aggravated robbery and engaging in organized criminal activity violated the double jeopardy
clause.


's testimony regarding Paz's reputation was
irrelevant and should not have been admitted. Evidence is relevant if it has any tendency to make the
existence of any consequential fact more or less probable than it would be without the evidence. Tex. R.
Crim. Evid. 401. The State offered the testimony as a circumstance tending to show that appellant should
have anticipated Saldana's murder. Appellant argues that the evidence was irrelevant to that issue because
the State failed to show that appellant was familiar with Paz's reputation.

 Questions of relevance should be left largely to the trial court, and that court's determinati