**Ex parte Carroll Glenn
SCOTT, Applicant.**

**No. WR–62896–02.**

Court of Criminal Appeals of Texas.

April 12, 2006.

Carroll Glenn Scott, pro se.

Sean K. Proctor, Asst. D.A., Belton, Matthew Paul, State's Atty., Austin, for state.

## *ORDER*

PER CURIAM.

This is a post-conviction application for a writ of habeas corpus forwarded to this Court pursuant to TEX.CODE CRIM. PROC. art. 11.07. Applicant was convicted of attempted capital murder and burglary of a habitation, and punishment was assessed at confinement for twenty-five years and ten years, respectively. These convictions were affirmed.[1]

Applicant contends, *inter alia*, that he was denied an opportunity to file a petition for discretionary review because his appellate attorney did not notify him that the convictions had been affirmed or what he needed to do to file such a petition. An affidavit[2] filed by appellate counsel states

---

1. *Scott v. State*, 861 S.W.2d 440 (Tex.App.-Austin 1993, no pet.).

2. Counsel states in his affidavit: "I know that one of Mr. Scott's allegations is that I 'abandoned' the appeal by failing to file a Petition for Discretionary Review (PDR). First of all, let there be no misunderstanding,

my firm ... did represent Mr. Scott on appeal, and did file a brief in his case. We raised all the issues that we raised at trial, and then some, e.g., the improper admission of evidence, the lack of evidence, double jeopardy violations, objections to the jury charge, refusing requested defense instruc-

that neither he nor his law firm have the written file pertaining to Applicant's case, but that it was his firm's usual practice to advise the client of the appellate decision and of his right to file a petition for discretionary review. The trial court recommended that Applicant be granted an opportunity to file an out-of-time petition for discretionary review.

The trial judge stated:

Here, the Court cannot say with certainty that [the attorney's] action or inaction caused the Applicant to be denied his right to file a PDR, but the practical effect has been the same; the Applicant has been denied this right. Moreover, the Court finds that the record has yielded no evidence that the Applicant caused this denial. Therefore, the Court concludes that the Applicant should be granted an out-of-time PDR.

 We disagree with the trial court's recommendation. It is the Applicant's burden to prove, by a preponderance of the evidence, that his attorney was constitutionally deficient before he might be entitled to relief on a writ of habeas corpus.[3] The record does not support the trial court's conclusion that Applicant has prov-

en, by a preponderance of the evidence, that his appellate attorney provided constitutionally ineffective assistance of counsel on appeal which prevented Applicant from filing a petition for discretionary review.

Habeas corpus relief is denied.

COCHRAN, J., filed a concurring opinion in which KEASLER and HERVEY, JJ., joined.

I join in the Court's order denying applicant habeas corpus relief because he failed to prove that his appellate attorney did not advise him of his right to file a petition for discretionary review. As a separate matter, however, I think applicant is also barred by the doctrine of laches from raising this issue twelve years after his conviction was affirmed by the court of appeals.

### I.

Applicant retained an attorney and his law firm to represent him at trial and, later, on appeal. A jury found applicant guilty of attempted capital murder and burglary of a habitation on November 8, 1991. The court of appeals affirmed his convictions on August 25, 1993.[1] In his application for a writ of habeas corpus

---

tions to the charge, etc. Unfortunately, his convictions were still affirmed by the Third Court of Appeals. *See Scott v. State*, 861 S.W.2d 440 (Tex.App.-Austin, 1993, no. pet.). Second, I have no independent recollection of the circumstances involving the filing of a Petition for Discretionary Review on Mr. Scott's behalf. If the opinion on direct appeal affirmed the defendant's conviction, my firm's usual practice was to advise the client that he or she had the right to file a PDR with the Court of Criminal Appeals within a certain time. I had spoken with ... the attorneys who worked with me on this case, and neither has documentation of that being done in this case. Therefore, all I can say is that it was our usual practice to advise the client of the appellate decision, and of his right to file a PDR and we have no reason to believe that was not done in this case."

**3.** *Ex parte Chandler*, 182 S.W.3d 350 (Tex. Crim.App.2005) ("To obtain habeas corpus relief for ineffective assistance of counsel under *Strickland v. Washington*, an Applicant must show that his counsel's performance was deficient and that there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance") (footnote omitted); *see, e.g., Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App.2002) (Applicant "must prove the constitutional violation and his entitlement to habeas relief by a preponderance of the evidence").

**1.** *Scott v. State*, 861 S.W.2d 440 (Tex.App.-Austin 1993, no pet.).

filed in 2005, applicant made numerous allegations of ineffective assistance against his attorney,[2] including: 1) failure to investigate the case; 2) failure to investigate the applicable law; 3) failure to cite and argue the applicable law on a defendant's right to elect at trial; 4) failure to cite and argue the applicable law on a defendant's right to a jury instruction on lesser-included offenses at trial; 5) failure to move for a directed verdict; 6) failure to object to an incomplete jury verdict; 6) allowing applicant to suffer a double jeopardy violation; and 7) "abandon[ing] the appeal during the appellate process by failing to file the petition for discretionary review and failing to advise defendant of his appellate and postconviction remedy rights."

The written trial and appellate record refuted all of applicant's factual allegations except for the claim that his counsel abandoned him by failing to file a petition for discretionary review. The habeas court requested applicant's former attorney to respond to this last assertion. Counsel did so. He filed a three page affidavit setting out his recollections of this client, his trial, and his appeal after consulting with two other attorneys in his law firm. The attorney admitted that neither he nor his law firm still had the written file pertaining to applicant's case. This is not surprising. The trial was in 1991; the court of appeals

rendered its decision in mid–1993; and applicant's counsel was not asked to submit an affidavit until June 10, 2005. That is almost twelve full years after applicant's conviction was affirmed on appeal.

The statute of limitations for filing a legal malpractice claim is two years;[3] the statute of limitations for filing grievance claims against an attorney is four years.[4] A reasonable attorney should be able to rely upon the statute of limitations for malpractice or grievance actions as a general guide for maintaining client files, at least in the absence of any comments or complaints by the former client. I cannot fault applicant's former attorney for failing to keep his written file on applicant's case for these past twelve years because applicant apparently never suggested that his former attorney's representation was deficient until 2005.

Nonetheless, applicant's attorney, aided by the official record, did a thorough job of reconstructing his recollection of this client and his representation. His response to applicant's numerous complaints of ineffective assistance was clear, coherent, and logical. Regarding the complaint that he "abandoned" applicant on appeal, his former attorney stated:

> We raised all the issues that we raised at trial, and then some, e.g., the improp-

**2.** Applicant raised four distinct claims in this application; the fourth claim was ineffective assistance of counsel at trial and on appeal. The trial judge found that the other three claims were without merit, and he recommended that they be denied. All three of those claims, along with ten others, had already been rejected by the court of appeals on direct appeal twelve years earlier. 861 S.W.2d at 442–49.

**3.** TEX. CIV. PRAC. & REM.CODE § 16.003(a) (two year statute of limitations for tort claims); *see First Nat'l Bank v. Levine,* 721 S.W.2d 287, 288–89 (Tex.1986) (statute of limitations for attorney malpractice claims is two years);

*Parsons v. Turley,* 109 S.W.3d 804, 807 (Tex. App.-Dallas 2003, pet. denied).

**4.** *See Delhomme v. Comm'n for Lawyer Discipline,* 113 S.W.3d 616, 619–20 (Tex.App.-Dallas 2003, no pet.) (citing former TEX.R. DISCIPLINARY P. 15.08 [now 15.06]; "No attorney licensed to practice law in Texas may be disciplined for Professional Misconduct occurring more than four years before the time when the allegation of Professional Misconduct is brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which disbarment or suspension is compulsory.").

er admission of evidence, the lack of evidence, double jeopardy violations, objections to the jury charge, refusing requested defense instructions to the charge, etc. Unfortunately, his convictions were still affirmed by the Third Court of Appeals. *See Scott v. State,* 861 S.W.2d 440 (Tex.App.-Austin, 1993, no pet.). Second, I have no independent recollection of the circumstances involving the filing of a Petition for Discretionary Review on Mr. Scott's behalf. If the opinion on direct appeal affirmed the defendant's conviction, my firm's usual practice was to advise the client that he or she had the right to file a PDR with the Court of Criminal Appeals within a certain time. I had spoken with ... the attorneys who worked with me on this case, and neither has documentation of that being done in this case. Therefore, all I can say is that it was our usual practice to advise the client of the appellate decision, and of his right to file a PDR and we have no reason to believe that was not done in this case.

And what evidence is there that counsel's usual practice was not followed in this case? Only applicant's bare assertion. Applicant made numerous assertions about his attorney's representation, but all of them were refuted by the record except for this single one. On applicant's assertion alone, the trial court recommended that applicant be given an out-of-time PDR.

The chain of logic is as follows:

1. Applicant did not file a PDR;

2. Twelve years later, applicant claims that he wanted to file a PDR;

3. There is no "certainty" that his attorney's actions or inactions denied applicant his right to file a PDR;

4. But applicant "was denied"[5] a right to file a PDR;

5. Because there is no evidence that applicant "caused" the failure to file a PDR, he is entitled to file an out-of-time PDR.

But, as the Court observes, it is the applicant who must prove, by a preponderance of the evidence, that his attorney was constitutionally deficient before he might be entitled to relief on a writ of habeas corpus.[6] I think that applicant's unsupported claim—made twelve years after the fact—is insufficient to prove his attorney actually failed to give him notice of his right to file a PDR, especially because applicant's numerous other assertions against his attorney were refuted by the written record. Those previous inaccurate assertions would logically count against applicant's credibility on this final claim.

## II.

Turning to the issue of tardiness, I also conclude that applicant is barred by the doctrine of laches from obtaining relief on this claim. He has provided no explanation why he waited twelve years after his conviction was affirmed to bring this claim. He has failed to show any compelling circumstances which would call for equitable relief. There is no suggestion that applicant's conviction was wrongly affirmed by the court of appeals, or that giving applicant the opportunity to file a petition for discretionary review is likely to lead to anything other than a *pro forma* exercise in futility. Had applicant made a persuasive showing that the court of appeals had wrongly affirmed his conviction, his claim

---

5. This sounds suspiciously like "the lamp fell off the table," as if these things just happen, untouched by human hands.

6. *Ante* at ——.

to equity might be stronger, but he has not done so.[7]

As we noted in *Ex parte Carrio*,[8]

"The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done."[9]

We further stated that "[t]his Court has never denied relief on a valid claim due to an applicant's delay in bringing the claim" because Texas, unlike the federal system, does not have a statute of limitations which requires a petition for habeas corpus to be filed within a certain period of time.[10] However, we also noted that an applicant's delay in bringing his claim may affect his credibility.[11]

Normally, laches is a doctrine that must be pled and proven by the opposing party,[12] but, like statutes of limitation, the doctrine of laches also protects courts from expending scarce judicial resources on stale claims and contentions.[13] Not only should an opposing litigant frown upon dilatoriness and delay, but courts themselves should scowl upon such conduct.

Furthermore, applicant's dilatoriness has succeeded in unfairly sullying the reputation of his former attorney. That attorney failed to keep applicant's file for triple the attorney-grievance limitations period; but, had he been put on notice of applicant's dissatisfaction at an earlier time, he might well have the documentary evidence to rebut applicant's claim against him. Although the State, the nominal opposing party, did not raise the equitable defense

---

7. Of course, if an inmate files an application for writ of habeas corpus within a reasonable time after discovering that his conviction had been affirmed on appeal, he need only prove that his attorney failed to inform him of his right to file a *pro se* PDR and that he would have done so in a timely manner had he been told of this right. *See Ex parte Crow*, 180 S.W.3d 135, 138 (Tex.Crim.App.2005) (noting that applicant had carried his burden to prove he would have filed a timely *pro se* PDR because "he filed his application [for habeas corpus relief] less than a year after the court of appeals's opinion became final, he has alleged that he was deprived of the right to file a PDR and that he believes a PDR would have had a significant chance of success.... And there is no controverting evidence suggesting that he would not have filed a PDR"). Conversely, it is at least a reasonable inference that the fact that applicant failed to take any steps to assert his right to file a *pro se* PDR for twelve years is some indication that he was not highly motivated to exercise this right and would not have exercised it in a timely manner.

8. 992 S.W.2d 486 (Tex.Crim.App.1999).

9. *Id.* at 487 n. 2 (*quoting* BLACK's LAW DICTIONARY 875 (6th ed.1990)).

10. *Id.* at 487.

11. *Id.*

12. *Id.*

13. *See Ex parte Steptoe*, 132 S.W.3d 434, 438–39 (Tex.Crim.App.2004) (Cochran, J., dissenting) (noting the enormous cost in judicial time, effort, and money exacted by habeas review and stating that "by protracting the finality of criminal litigation, habeas review 'undermines confidence in the integrity of our procedures' and inevitably delays and impairs the orderly administration of justice"; concluding that "[r]outinely granting habeas corpus claims requesting an out-of-time petition for discretionary review, filed long after a direct appeal is affirmed on the merits by a court of appeals, undermines the deterrent and rehabilitative functions of the criminal law").

of laches, what about the prejudice to applicant's attorney, the real opposing party in this scenario? He has suffered a grave injustice. By allowing applicant to assert his claim of deficient representation so long after the relevant events virtually ensures that any evidence which was originally available to rebut applicant's assertions no longer exists. We should not condone a practice which permits inmates to wait for many years after their convictions are final (and their attorneys' files likely lost or discarded) to assert claims of ineffective assistance of counsel.

I would hold that there is a presumption against the credibility of an applicant who asserts ineffective assistance of counsel when that claim is first raised in a petition for habeas corpus outside the four-year attorney-grievance statute of limitations. This presumption may be rebutted, but unless an applicant provides evidence of why he could not file a timely claim or how he was unable to discover his attorney's constitutionally deficient conduct, his bare assertions should not be deemed sufficient to support a claim for relief. Courts should be willing to apply the doctrine of laches on behalf of the real party-in-interest whose competence and reputation has been attacked and who has explained why he is unable to produce evidence to support his own defense.

I would deny applicant relief for these reasons, as well as those stated in the Court's order.