AFFIRMED; Opinion issued January 31, 2013.



In The

# Court of Appeals

# Fifth District of Texas at Dallas

## No. 05-12-00737-CR

## EX PARTE RENE CONTRERAS HERNANDEZ

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MC11-B0989**

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice O'Neill

Rene Contreras Hernandez appeals the trial court's order denying his application for writ of habeas corpus. In three issues, appellant contends the trial court erred in denying relief because his guilty plea was involuntary and counsel rendered ineffective assistance. We affirm.

## RELEVANT BACKGROUND

In 2006, appellant pleaded guilty to misdemeanor assault involving family violence and the trial court assessed a negotiated punishment of 300 days confinement in jail and a $200 fine, probated for eighteen months. In 2011, appellant filed an application for writ of habeas corpus contending his plea was involuntary and he received ineffective assistance of counsel.[1] It is

---

[1] The record on appeal is incomplete and does not contain appellant's written application, his affidavit supporting his application, the trial court's initial written order, and any documentation of the underlying plea proceedings. During the writ hearing, the trial court and appellant's plea counsel discussed whether a reporter's record would have been made of the misdemeanor plea and concluded it probably was not put on the record. The record does contain reporter's records of the writ hearings, the trial court's supplemental order denying habeas relief and making findings of fact and conclusions of law, and the parties' written briefs to the trial court. We glean the facts of this case from the trial court's findings, the evidence

undisputed that appellant is a non-citizen residing illegally in the United States.

During the writ hearing, appellant's immigration counsel testified his conviction would result in automatic deportation. Appellant and trial counsel both testified and offered conflicting accounts about what advice trial counsel gave appellant regarding the prospect for deportation. Appellant testified he expressed concern to trial counsel about how his case would affect his immigration status but trial counsel did not advise him about deportation. Instead, appellant related trial counsel told him, "I got two choices. I can go to jail two years or get probation two years. . . . He told me there's nothing that I can do, the only thing I can do is just say 'guilty,' and get two probation—two years probation." Appellant testified he was unaware he faced deportation until August 2011 when he was arrested for public intoxication. Appellant testified he would not have entered a guilty plea to the assault offense had he known his plea would result in his exclusion from the United States.

Counsel testified he represented appellant on the assault charge and a second charge for possessing brass knuckles found in appellant's pocket when appellant was arrested. Counsel was aware appellant was in the country illegally and that a conviction involving domestic violence would be "fatal" to appellant for deportation purposes. Counsel insisted that he always used the word "fatal" with his clients in describing how this type of conviction would affect immigration status. Counsel testified he communicated this information to appellant and a decision was made to set the case for trial because of the prospect of deportation in the event of a conviction. Counsel testified that appellant had no "realistic defense" to the brass knuckles case and the trial strategy was "to get rid of that assault case and plead the weapon case to something else and hope that the third party witness didn't show up." According to counsel, appellant decided on the day of trial to enter a guilty plea to the assault charge because the third-party witness had appeared, appellant had no defense to

---

presented at the writ hearing, and the parties' uncontested statements of fact in their briefs.

-2-

the brass knuckles case, and "we were just risking, you know, jail time at that point on the assault with a third party witness here."

The eyewitness, Montie Gentry, testified he could no longer recall the details of the offense, describing the time period at issue as "a gray area in my life and I don't remember. I can't recall everything that happened to the tee." Gentry testified he had given the police a statement about the offense and he affirmed he had attempted to truthfully describe what he had seen to the police. Gentry affirmed he "may have" told the police that he saw appellant grab the complainant by the throat and pull her during an argument in a grocery store parking lot causing a child in a car seat to topple out of a shopping cart onto the ground.

Before the writ hearing, Gentry had signed an affidavit averring he was not subpoenaed to appear at appellant's trial. Gentry testified no one ever contacted him about testifying, he was never subpoenaed to appear in court to testify, and he never came to court to testify. He testified "[i]t could be possible" he had spoken on the telephone with a prosecutor in 2006 and suggested the State might have subpoenaed the wrong person for trial. When confronted with a subpoena return showing he was subpoenaed, Gentry admitted he worked at the address where he was supposedly subpoenaed and when asked if it was him reflected in the subpoena return, he responded, "I'm sure."

After hearing the testimony, the trial court entered an order denying the application. In a supplemental order, the trial court entered findings of fact and conclusions of law. The trial court found counsel advised appellant that "a plea of guilty to a Class A Assault could have immigration consequences, including the possibility of deportation." The trial court also noted in its findings that it was the trial court's own practice to verbally admonish defendants that assault convictions could have immigration consequences. The trial court concluded appellant failed to prove counsel's representation fell below an objective standard of reasonableness and it further concluded appellant's

plea was entered knowingly and voluntarily.

## APPLICABLE LAW

An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) (per curiam). In reviewing the trial court's order denying habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *See Kniatt*, 206 S.W.3d at 664. We will uphold the trial court's ruling absent an abuse of discretion. *See id.* We afford almost total deference to the trial court's determination of the historical facts that the record supports. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We likewise defer to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *See id.* If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *See id.*

To obtain habeas corpus relief on the ground of ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A decision to enter a guilty plea based upon erroneous advice from counsel is not voluntary. *Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). To prove his guilty plea was involuntary due to ineffective assistance of counsel, appellant must show (1) counsel's plea advice did not fall within the wide range of competence demanded of attorneys in criminal cases and (2) there is a reasonable probability that, but for counsel's deficient performance, appellant would have insisted on going to trial rather than accepting the offer and pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Harrington,* 310

S.W.3d at 458.

After appellant finished serving his community supervision, the United States Supreme Court issued an opinion clarifying counsel's duty to give advice regarding how a plea might affect a non-citizen client's potential deportation. *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). When the deportation consequences are "not succinct and straightforward," counsel's duty is to advise the defendant of the possibility that the plea may carry a risk of adverse immigration consequences. *Id.* at 1483; *see also Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012). When, however, federal law clearly specifies that the defendant will be deported, counsel must affirmatively and correctly advise the defendant about immigration consequences of the plea. *See Padilla*, 130 S. Ct. at 1483; *Moussazadeh*, 361 S.W.3d at 691. Although the parties disputed whether *Padilla* applies retroactively to this appeal, this Court applies *Padilla* retroactively. *See Ex parte Olvera*, 2012 WL 2336240, *4 (Tex. App.—Dallas June 20, 2012, no pet.). As someone present in the country illegally, facing a charge of assault involving family violence, appellant faced the prospect of certain deportation upon conviction. *See* 8 U.S.C.A. §1227(a)(2)(E)(i) (2008) (adding aliens committing crimes of domestic violence to the class of deportable aliens who shall be removed from the United States).

## ANALYSIS

In his first two issues, appellant contends his guilty plea was involuntary because counsel failed to advise him properly about the immigration consequences of his guilty plea and erroneously told him that his only option was to plead guilty to the charge. Appellant contends counsel rendered ineffective assistance because when appellant brought to counsel his concerns about the immigration consequences of his plea, counsel did not give him any advice about deportation or discuss alternatives but instead advised him to enter a guilty plea even though he faced automatic deportation

and he would have been acquitted had he proceeded to trial. Because of counsel's ineffective assistance, appellant contends his guilty plea was not entered intelligently and voluntarily and should be set aside. The State responds that counsel gave appellant the appropriate advice about both deportation and entry of his plea.

Appellant's appeal turns on the credibility of the witnesses. Appellant did not seek habeas relief until five years after the events at issue. Because of the passage of time, counsel could not remember key events and Gentry described the time period at issue as "a gray area" for him. An applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim. *Kniatt*, 206 S.W.3d at 664. Moreover, the record on appeal is incomplete, making it impossible for this Court to review all the relevant evidence. In particular, we would have to speculate about the admonishments appellant received from the trial court and some of the factual allegations he makes in his affidavit. It is the applicant's burden to present a sufficient record on appeal to support his factual allegations with proof by a preponderance of the evidence. *See Ex Parte Chandler*, 182 S.W.3d 350, 353 n. 2 (Tex. Crim. App. 2005).

We do, however, have the trial court's findings of fact and conclusions of law. *See id.* (relying on the trial court's findings to assess the facts when a reporter's record was not presented). After hearing appellant deny counsel had given him any deportation advice and hearing counsel testify that he had advised appellant a conviction would be "fatal" to his immigration status, the trial court made a finding of fact that counsel had advised appellant his conviction "could have immigration consequences, including the possibility of deportation." The trial court then concluded appellant had not shown counsel's advice fell below an objective standard of reasonableness in violation of the first prong of *Strickland*. *See Strickland*, 466 U.S. at 687–88. When viewed together, the finding of fact and conclusion of law show the trial court found counsel's testimony on

–6–

deportation to be more credible than appellant's conflicting testimony. Because the trial court's findings contrary to appellant's contentions are based on the trial court's evaluation of the witnesses' testimony and demeanor and are supported by the fragmentary record before us, we defer to the trial court's credibility judgment. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).

Counsel's advice that a guilty plea would have "fatal" deportation consequences satisfied counsel's obligations to render correct immigration advice. *See Padilla*, 130 S. Ct. at 1483; *Moussazadeh*, 361 S.W.3d at 6191. On the record presented, we cannot conclude appellant has shown trial counsel's representation regarding the immigration consequences of his plea fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88; *Harrington*, 310 S.W.3d at 458. Likewise, we cannot conclude appellant has carried his burden to show his guilty plea was entered unknowingly and involuntarily. *Harrington*, 310 S.W.3d at 458; *Kniatt*, 206 S.W.3d at 664; *Scott*, 190 S.W.3d at 673. We overrule appellant's first two issues.

In his third issue, appellant contends counsel rendered ineffective assistance by failing to conduct an adequate factual investigation of appellant's case. Relying on Gentry's 2011 affidavit and writ hearing testimony, appellant contends Gentry would not have testified that he observed appellant assaulting the complainant but only that Gentry saw appellant's child fall. Appellant asserts Gentry could not recall observing an assault and was not subpoenaed to appear at trial. Appellant faults counsel for not contacting Gentry directly to discuss the case and for not advising appellant that the State lacked the necessary proof to obtain a conviction.

The State responds that Gentry's 2011 testimony, taken five years after the relevant time period, which Gentry described as a "gray area" in his memory, does not establish what testimony Gentry would have given at a 2006 trial. The witnesses could not agree about whether Gentry was present pursuant to a subpoena on the date of trial. The trial court implicitly resolved the issue

against appellant. On the record presented, we cannot conclude the trial court's finding that appellant failed to show counsel's representation fell below an objective standard of reasonableness should be disturbed on appeal. *See Amezquita*, 223 S.W.3d at 367.

Finding no merit to appellant's contentions, we cannot conclude the trial court abused its discretion in denying appellant's application for writ of habeas corpus. *See Peterson*, 117 S.W.3d at 819.

We affirm the trial court's order denying relief on appellant's application for writ of habeas corpus.

MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120737F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EX PARTE RENE CONTRERAS
HERNANDEZ

No. 05-12-00737-CR

Appeal from the County Criminal Court No.
10 of Dallas County, Texas. (Tr.Ct.No.
MC11-B0989).
Opinion delivered by Justice O'Neill,
Justices FitzGerald and Lang-Miers
participating.

Based on the Court's opinion of this date, the order of the trial court denying habeas relief
is **AFFIRMED**.


Judgment entered January 31, 2013.


MICHAEL J. O'NEILL
JUSTICE