ACCEPTED
01-13-01045-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/18/2015 2:29:43 PM
CHRISTOPHER PRINE
CLERK

# No. 01-13-01045-CR

In the

## Court of Appeals

For the

## First District of Texas

At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/18/2015 2:29:43 PM

CHRISTOPHER A. PRINE
Clerk

———————◆———————

No. 1921607
In the County Criminal Court at Law No. 2
of Harris County, Texas

———————◆———————

# EX PARTE RICHARD MARK BOWMAN

———————◆———————

## STATE'S BRIEF ON REMAND
## FROM COURT OF CRIMINAL APPEALS

———————◆———————

DEVON ANDERSON
District Attorney
Harris County, Texas

DAVID OVERHULS
Assistant District Attorney
Harris County, Texas

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713.755.5826

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below:

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Bridget Holloway** — Assistant District Attorney on appeal

**David Overhuls** — Assistant District Attorney at laches hearing

**Lindsey Vanik** — Assistant District Attorney at writ hearing

*Appellant or criminal defendant:*

**Richard Mark Bowman**

*Counsel for Appellant:*

**Randy Schaffer** — Counsel on appeal & laches and writ hearings

**Brian Wice** — Counsel on appeal & laches and writ hearings

**Ned Barnett** — Counsel at 2005 DWI trial

*Trial Judge:*

**Hon. William Harmon** — Presiding Judge at laches and writ hearings

**Hon. Michael Peters** — Presiding Judge at trial

i

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES .................................................................................... i

TABLE OF CONTENTS................................................................................................... ii

INDEX OF AUTHORITIES .............................................................................................. iii

STATEMENT OF THE CASE & PROCEDURAL HISTORY ............................................ 1

SUMMARY OF THE STATE'S ARGUMENT.................................................................. 5

STATEMENT REGARDING ORAL ARGUMENT.......................................................... 6

STATE'S REPLY TO APPELLANT'S GROUND FOR REVIEW ...................................... 7

    Applicable Authority ............................................................................................... 7
    Analysis .................................................................................................................. 9
        A.   Equitable Relief is Barred by Laches.................................................... 9
            1.   Unreasonable & Inexcusable Delay ....................................... 9
            2.   State is Prejudiced by Appellant's Unreasonable & Inexcusable Delay .... 14
        B.   Ineffective Assistance of Counsel Claim is Without Merit............................ 14
        C.   Conclusion.................................................................................... 18

PRAYER................................................................................................................... 18

CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE ............................... 19

# INDEX OF AUTHORITIES

**CASES**

*Ex parte Bowman,*
444 S.W.3d 272
(Tex. App. —Houston [1st Dist.] 2014) (op. on reh'g),
pet. granted, judgm't vacated, 447 S.W.3d 887 (Tex. Crim. App. 2014) ................. 3

*Ex parte Bowman,*
447 S.W.3d 887 (Tex. Crim. App. 2014) .............................................................3, 6, 7, 9

*Ex parte Carrio,*
992 S.W.2d 486 (Tex. Crim. App. 1999) ................................................................. 7

*Ex parte Garcia,*
353 S.W.3d 785 (Tex. Crim. App. 2011). .................................................................. 7

*Ex parte Perez,*
398 S.W.3d 206 (Tex. Crim. App. 2013) ...........................................................7, 8, 14

*Ex parte Smith,*
444 S.W.3d 661 (Tex. Crim. App. 2014) ...................................................................2

*Ex pate Scott,*
190 S.W.3d 672 (Tex. Crim. App. 2006) ..................................................................13

*Scheanette v. State,*
144 S.W.3d 503 (Tex. Crim. App. 2004) ...................................................................17

*Strickland v. Washington,*
466 U.S. 668 (1984) .............................................................................................15

**STATUTES**

TEX. PENAL CODE
   §49.09(a) (West 2013) ............................................................................................13

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A)...........................................................................................i

TEX. R. EVID. 608(b)............................................................................................................17

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE & PROCEDURAL HISTORY

Appellant, Richard Mark Bowman, was found guilty of driving while intoxicated (DWI) in 2005. (RRIV —Ex. 1). Pursuant to a punishment agreement, the trial court sentenced appellant to 180 days' confinement, probated for one year, and assessed an $800 fine. (RRIV —Ex. 13 at 237, 240-41). While appellant originally appealed his conviction, his motion to dismiss the appeal was granted in January 2006. *See* No. 01-05-00106-CR. Appellant was successfully discharged from his probation in 2007.

In April 2013, appellant was arrested and charged with another DWI. The charge was enhanced with his 2005 conviction, making it a DWI second offender. (RRIV —Ex. 1). Only after his second offender arrest did appellant file an application for writ of habeas corpus, alleging that his trial counsel was ineffective in 2005. After a hearing on the writ, with testimony from his 2005 trial counsel, the trial court denied appellant habeas relief. (CR at 4, 85; RRIII at 22). Findings of fact and conclusions of law were entered. (CR at 100). Appellant timely appealed the trial court's denial of habeas relief. (CR at 115).

On June 5, 2014, this Court issued a published opinion finding (1) the Court of Criminal Appeals' opinion in *Ex parte Smith*, 444 S.W.3d 661 (Tex. Crim. App.

1

2014) would be inapplicable to an 11.072 writ, (2) the State failed to preserve the appellate court's consideration of the doctrine of laches by failing to assert the doctrine in the trial court; and (3) despite the trial court's denial of habeas relief, the trial court's findings do not support that trial counsel's defense strategy was informed by a reasonable pre-trial investigation. This Court then granted appellant habeas relief and set aside the 2005 judgment of conviction. *See Ex parte Bowman*, No. 01-13-01045-CR (Tex. App. —Houston [1st Dist.] June 5, 2014) (op. withdrawn on denial of reh'g).

The State filed a motion for rehearing and a motion for rehearing en banc on June 13, 2014, with the following grounds: (1) asking the court to delete harmful and baseless dicta indicating that how the doctrine of laches might apply to an 11.07 writ would not be applicable to an 11.072 writ; (2) noting the court erred in holding the State waived the application of the doctrine of laches when the State was the prevailing party at the writ hearing, and the court of appeals, therefore, was permitted to uphold the ruling on any legal theory, including the doctrine of laches, regardless of the State's failure to raise the issue at the hearing; (3) noting the court erred in reversing the trial court's ruling on an issue never raised by the losing party at the writ hearing when the appellant argued, and the trial court ruled, on whether trial counsel was ineffective for failing to cross-examine the officer with his payroll record, not whether he was ineffective for failing to do an

adequate pretrial investigation; and (4) pointing out it was error to find appellant was prejudiced by his trial counsel's failure to use a document he testified he would not have used and that is inadmissible under the rules of evidence.

On August 26, 2014, this Court denied the State's motion for rehearing, withdrew its earlier opinion, issued a new, yet unsubstantially different, published opinion, and "dismissed as moot" the State's motion for rehearing en banc. *See Ex parte Bowman*, 444 S.W.3d 272 (Tex. App. —Houston [1st Dist.] 2014) (op. on reh'g), pet. granted, judgm't vacated, 447 S.W.3d 887 (Tex. Crim. App. 2014).

On petition for discretionary review, the Court of Criminal Appeals simultaneously granted and delivered its opinion, vacating this Court's opinion, on the State's following issue on November 19, 2014:

> **Second**: Does the State have to argue laches at an article 11.072 hearing, in which the State was the prevailing party, to preserve the equitable doctrine for review on appeal?

Relying on its opinion in *Ex parte Smith*, the Court of Criminal Appeals held that "equity and fairness[,] applies to any habeas case" and "the State is correct that laches applies to Art. 11.072." *See Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014). The Court further concluded that "[the State's] laches argument was not waived." *See id.* Accordingly, the Court of Criminal Appeals, as it did in *Ex*

3

*parte Smith*, vacated this Court's opinion and remanded this case to this Court to "remand to the trial court for a hearing on the laches issue." *See id.* at 888-89.

The Court of Criminal Appeals "dismissed without prejudice" the following two issues:

> **First**: The First Court of Appeals erred in finding appellant's trial counsel ineffective for failing to obtain a document he testified he strategically would have chosen not to use, contained information he knew and utilized, and that was a document inadmissible under the rules of evidence.
>
> **Third**: The First Court of Appeals erred in failing to find laches barred appellant habeas relief and supported the trial court's ruling.

*See id.* at 889.

On January 27, 2015, this Court abated this case to the trial court, where a hearing on the laches issue took place on March 2, 2015. At the conclusion of the hearing, the trial court found: (1) appellant's delay in waiting to file his habeas claim was unreasonable because it was sought now only to void his first DWI where he faced a minimum of thirty days in jail upon his second DWI charge; (2) while appellant consulted with three attorneys (Michael Pena, Troy McKinney, and Brian Wice) after his first DWI conviction in 2005, he relied on their advice; and (3) the State was prejudiced by appellant's delay due to the unlikelihood the State could get a conviction on a misdemeanor DWI on facts now over ten years

4

old. (LHII at 149). The trial court concluded appellant was not entitled to equitable relief. (LHII at 149).

———————◆———————

## SUMMARY OF THE STATE'S ARGUMENT

While appellant initially argued his trial attorney at his conviction on this case, Ned Barnett, was ineffective for failing to obtain Officer Lindsey's payroll records when "no reasonably competent lawyer [in 2005] would have gone to trial in a case involving Lindsey without first obtaining his payroll and disciplinary records,"[1] he now asks this Court to find that the three attorneys who reviewed this case post-conviction in 2005 let him down since they failed to see what "all reasonably competent lawyers" were supposed to know, and bring an ineffective-claim against Barnett, and were thus the reason for his delay in seeking habeas relief. Upon appealing the denial of habeas relief before this Court last year, Wice continuously argued "no reasonably competent lawyer" would have failed to get Lindsey's payroll record back in 2005; yet, he now claims he is the exception, because although he was one of the attorneys who reviewed appellant's trial record for purposes of filing a writ back in 2005, he did not know about Lindsey's

---

[1] See "Brief for Appellant" at 22, authored by Wice and Randy Schaffer.

5

overtime pay back then.[2]  Appellant cannot have it both ways in order to succeed on one claim and defeat another.

The record shows the only reason appellant sought habeas relief over seven years later was to "get rid" of the conviction so it would not enhance his second DWI charge.  Because the bases of appellant's ineffective-assistance claim is either without merit or barred by the equitable doctrine of laches, the trial court never abused its discretion in denying appellant his requested relief.

———————◆———————

## STATEMENT REGARDING ORAL ARGUMENT

Because the applicable law is clearly stated in the Court of Criminal Appeal's remand to this Court, *see Ex parte Bowman*, 447 S.W.3d at 888, and because the laches hearing in the trial court thoroughly addressed the issues to be considered, another argument involving the exact same issues is unnecessary for this Court's review of the trial court's findings.

———————◆———————

---

[2] See "Appellant's Post-Abatement Brief" at 12, also authored by Wice and Schaffer ("Wice, who handles post-conviction cases, did not know about Lindsey in 2005… [because] McKinney did not tell Wice about Lindsey's overtime pay scam, and Wice did not know about it because he did not try DWI cases.").

## STATE'S REPLY TO APPELLANT'S GROUND FOR REVIEW

Appellant argues the trial court abused its discretion in finding that laches precluded him from receiving habeas relief. Because appellant's delay in seeking habeas relief was unreasonable and would have never happened were it not for his second DWI arrest (and thus inexcusable), because the State would be prejudiced in retrying a case over ten years old, and because appellant has now made it abundantly clear that only "some" and not "all" reasonably competent attorneys would have used Officer Lindsey's payroll record in an attempt to discredit him, the trial court has not abused its discretion in denying appellant habeas relief.

## APPLICABLE AUTHORITY

A trial court's denial of habeas corpus relief is reviewed for an abuse of discretion. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). An Article 11.072 writ, like any habeas case, is governed by the elements of equity and fairness. *See Ex parte Bowman*, 447 S.W.3d at 887. The Court of Criminal Appeals has recognized that the doctrine of laches can bar habeas relief when the State is harmed as a result of an unreasonable delay in pursuing a habeas claim. *See Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999); *see also Ex parte Perez*, 398 S.W.3d 206, 215 (Tex. Crim. App. 2013) (reaffirming *Carrio's* holding that Texas

courts may apply the common-law doctrine of laches in determining whether to grant habeas relief).

In *Ex parte Perez*, the Court abandoned the federal laches standard in favor of the common-law standard in order to "incorporate all forms of prejudice" viewed in light of the "totality of the circumstances." *See id.*, at 208. Under the common-law standard, no "particularized showing of prejudice" is required, which allows courts to consider prejudice more "broadly." *Id.* at 215. The standard broadens the definition of prejudice to include "anything that places the State in a less favorable position," including "prejudice to the State's ability to retry a defendant." *Id.*

The extent of the prejudice that the State must prove bears an inverse relationship to the length of the appellant's delay. *Id.* at 217. The longer an appellant delays filing an application, the less evidence the State must show to demonstrate prejudice. *Id.* at 217-18 (reasoning that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised). This is especially true when defendants delay for "much more than five years after conclusion of direct appeals." *Id.* A delay longer than five years "may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 261 n. 12.

In reviewing the sufficiency of the evidence to support a laches bar, courts should consider the following: (1) the length of the defendant's delay in requesting

equitable relief; (2) the reason for the delay; (3) the degree and type of prejudice bore by the State because of the delay; and (4) if the delay should be excused. *See Ex parte Bowman*, 447 S.W.3d at 888 (quoting *Ex parte Smith*).

## ANALYSIS

### A. Equitable Relief is Barred by Laches

#### 1. Unreasonable & Inexcusable Delay

Appellant delayed longer than five years. A jury found appellant guilty of DWI on January 11, 2005. (CR at 21). While appellant originally appealed that conviction, his motion to dismiss the appeal was granted on January 12, 2006, and the appellate court issued mandate one day later. *See* No. 01-05-00106-CR. Appellant's habeas application, filed September 30, 2013, sought relief based on counsel's performance roughly seven years earlier and now over ten years ago.

Appellant's explanation for the delay was that "three lawyers told him in 2005 that there were no grounds for relief."[3] Thus, he did nothing until his second DWI arrest. And, because this conflicts with his argument that all competent attorneys would have known to use Lindsey's payroll record to cross-examine him, he attempts to offer a reason why each one failed to challenge Barnett, via a habeas proceeding, for not utilizing the payroll record:

---

[3] Appellant's Post-Abatement Brief at 3.

- Michael Pena: dismissed appellant's appeal, and Wice testified he agreed that "Barnett did not preserve any appellate issues" (LHII at 67);

- Troy McKinney: a "DWI guru" according to Wice, failed to file a writ based upon ineffective assistance because of his relationship with Barnett and failed to disclose that to appellant (LHII at 66); and

- Brian Wice: although "every reasonably competent lawyer" knew to use Lindsey's payroll, not Wice, because he did not try DWI cases and McKinney failed to tell him about Lindsey's payroll scam (LHII at 66).

First, the record shows that appellant only attempted to insinuate why McKinney did not file an ineffective assistance claim against Barnett, through Barnett's testimony. (LHII at 55-60). Appellant did not call McKinney to testify, the State did. Either way, both Barnett and McKinney testified that they were not good friends and did not practice business together. (LHII at 55-60, 117-29). In 2005, however, McKinney's firm (with Stanley Schneider) allowed Barnett to rent a space for one of Barnett's associates, who was already in that space when he hired her. (LHII at 55-57, 119). Additionally, both men's firms had a joint venture in creating a website for sex cases that never involved handling a case together. (LHII at 57-58, 119). McKinney testified he has filed writs on friends before and has declined to be involved in writs based upon his relationship with the trial attorney. (LHII at 125). While his memory on this case specifically has faded, he

10

further testified he "always" discloses to his clients any conflicts that exist.[4] (LHII at 128). When asked about Lindsay's overtime pay reputation in 2005, McKinney testified:

> I don't know that it was widely known among the criminal defense bar in general. I think most of the people who did DWI defense knew about overtime of everyone on the task force, whether they knew specifically about Lindsey or not.

(LHII at 121). While appellant prays this Court will believe the only reason McKinney failed to file an ineffective assistance of counsel claim against Barnett via a habeas proceeding was because of their relationship, the record fails to support that claim.

Second, either Wice was incompetent in 2005 or not everyone knew to use Lindsey's payroll record against him in 2005. It cannot be both ways to garner habeas relief on the same case (one way to succeed on appellant's claim and the other to defeat the State's defense). The pinnacle of appellant's claim from the beginning was that Barnett failed to do what "all reasonably competent lawyers" would have done in 2005. Yet, McKinney, who was, and still is, a "DWI guru," did not file an ineffective assistance of counsel claim against Barnett for failing to do so, and testified he was not sure how well known Lindsey's scam was back in 2005. (LHII at 121). And, of course, Wice did not catch it as an issue to bring on

---

[4] "There have been occasions when people have come to me and because of the lawyer involved I did not want to be involved with the writ. That was always dealt with up front before I accepted any money to investigate the case." (LHII at 124).

11

habeas, no matter what his excuse,[5] when "all reasonably competent lawyers" were supposed to know it in 2005. In fact, when asked on cross-examination about his prior claim that "everyone knew about [Lindsey's] overtime," Wice answered, "I don't know about everybody, and I don't know to what extent everybody knew about it." (LHII at 74).[6]

The record clearly establishes that not all attorneys knew about Lindsey's overtime scam nor used his payroll record against him in trial. Pena, McKinney, and Wice were not incompetent and did not let appellant down in 2005. By actually cross-examining Lindsey about his overtime pay in appellant's trial in 2005, Barnett knew more than Wice did at the time (yet was found ineffective by this Court). Appellant knowingly acquiesced to all three attorneys informing him he had no grounds to appeal nor to attack on a post-conviction writ of habeas corpus.

Third, when asked how he got involved in this case in 2013, Wice testified:

> I got a phone call from someone at Rusty Hardin's office asking
> me to talk to Mr. Bowman about whether there was anything

---

[5] While Wice testified he did not try DWI cases, he clarified on cross-examination that he sat as second chair on a few DWI cases, including one with Barnett, and may have even taken a witness "that couldn't hurt us." (LHII at 71).

[6] Furthermore, although rarely successful on direct appeal, Pena could have still challenged Barnett's effectiveness on direct appeal; instead, he dismissed the appeal (and presumably did not see what "all reasonably competent lawyers" were deemed to know at the time).

> that could be done, *given the fact that he had been arrested and charged as a second offender in his second DWI case.*

(LHII at 68). Appellant confirmed this by testifying he hired Wice in 2013 after his lawyer on his second DWI charge recommended he contact Wice to see if he could get his first DWI set aside. (LHII at 88). Schaffer even argued to the Court that appellant "was trying to do what his lawyer said, get rid of the first DWI so it don't hurt you in the second." (LHII at 112). No defendant should be able to sleep on his rights until another arrest, then decide he needs to "get rid" of the first arrest so he will not be punished as the legislature has planned upon subsequent arrests. That is not an excusable delay. The State and the society have a legitimate interest in the finality of a long-standing conviction. *Ex parte Perez*, 398 S.W.3d at 218. Further, courts should not condone a practice of sullying an attorney's reputation many years after convictions are final. *See Ex pate Scott*, 190 S.W.3d 672, 673-77 (Tex. Crim. App. 2006) (Cochran, J., concurring). The record supports the trial court's ruling that appellant filed this habeas claim seven years later, only because he wanted to void his first DWI when he was looking at a minimum of thirty days in jail upon a second DWI conviction. (LHII at 149). *See* Tex. Penal Code §49.09(a) (West 2013).

## 2. State is Prejudiced by Appellant's Unreasonable & Inexcusable Delay

Even though a "particularized" showing of prejudice is no longer required, the delay clearly caused memory lapses in the testimony of the witnesses. All three officers involved in appellant's arrest in 2004 had no independent recolleciton of appellant's case. (LHII at 21-30, 35-38, 41, 46-47). While they could regurgitate what they testified to at the prior trial, it would not be from a memory of the day of his arrest. Appellant's attorneys still have possession of the only functioning copy of the scene video of his arrest. Given the "sliding scale" approach, appellant's unreasonable delay supports a finding of prejudice to the State to try the case over ten years after appellant's arrest. *See Ex parte Perez*, 398 S.W.3d at 215.

The trial court did not abuse its discretion in concluding that appellant was barred from habeas relief under the equitable doctrine of laches.

## B. Ineffective Assistance of Counsel Claim is Without Merit

Given the new evidence offered at the second hearing on this habeas request, the State urges this Court to reconsider its prior conclusion that Barnett was ineffective in failing to do what "all reasonably competent lawyers" would have done in 2005. It is impossible to ignore that the hearing on laches brought forth contrary evidence to appellant's argument that Barnett's representation fell below that of a reasonably competent attorney.

Under the first prong of *Strickland*, appellant must show that his counsel's performance was deficient to the extent that counsel failed to function as "counsel" guaranteed by the Sixth Amendment, not that he failed to do what "some" attorneys might have done. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellant initially argued to the trial court, and this Court, that Barnett was ineffective for failing to use Lindsey's payroll record to show the officer had an incentive to make arrests. Appellant presented affidavits from three criminal defense lawyers who claimed no reasonably competent lawyer would have gone to trial on a case involving Lindsey without first obtaining his payroll and disciplinary records. (CR at 31-41, Exs. 7-9). Appellant offered the officer's payroll record to show he frequently made more in overtime pay than in his regular salary. (CR at 6, Ex. 2).

Barnett testified he elicited from Lindsey that he received time-and-a-half pay to be at the courthouse on his cases and that he made 476 arrests alone in 2004. (RRII at 20-21, 24, 39). Barnett also testified he strategically decided not to "beat up" on the officer because, in his experience, it could alienate the jury. (RRII at 26, 30, 35). He further testified he wanted the jury not to focus on the officer, but on appellant's adequate performance on the video. (RRII at 12, 35, 47-48).

The trial court found that trial counsel "did not know whether he had the information regarding Lindsey's overtime pay at the time of [appellant's] trial but

15

that, even if he did, he would not have used it," trial counsel did not have Lindsey's payroll record at the time of appellant's trial in 2005, and "[s]ome criminal defense lawyers would obtain Lindsey's HPD payroll records" and "impeach him...to demonstrate his financial motive for making DWI arrests." (CR at 105-07). Ultimately, the trial court concluded that eliciting the number of arrests the officer made the previous year, and that he was paid time-and-a-half for overtime to testify in court, "did give the jury sufficient information to assess [the officer's] financial motivation," and trial counsel "acted within [ ] the accepted practice of a reasonable professional by choosing to impeach Officer Lindsay to the degree he did." (CR at 107).

The record now shows, more so than before, that only "some" attorneys would have obtained Lindsey's payroll record to use against him in 2005. Pena, McKinney, and Wice would not have done it in 2005. Wice would not have even crossed Lindsey about his overtime pay. Barnett investigated enough to be aware of the overtime pay incentive by Lindsey. That he did not do what "some defense attorneys" did (or on appeal, would have done in retrospect), does not amount to ineffective assistance of counsel. Giving the jury an exact number of "overtime pay," that was not exclusively based upon time in the courtroom due to DWI

16

arrests,[7] is merely a more aggressive route to take and one that could potentially alienate the jury. Because appellate counsel (Schaffer, not Wice) would have obtained and used the officer's payroll record to cross-examine him, does not make Barnett's strategic decisions deficient. *See Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004).

Moreover, despite the trial court's ruling that it would have allowed trial counsel to use the record, it would have been inadmissible under rule 608(b). It is impermissible to use extrinsic evidence to attack a witness's credibility with specific instances of conduct, other than the conviction of a crime, unless the witness has testified about these matters in a manner inconsistent with the evidence sought to be introduced. *See* TEX. R. EVID. 608(b). Officer Lindsey testified to the number of arrests made the prior year and that he was paid overtime for testifying in court on those arrests. Nothing about his testimony was inconsistent with his payroll record. Appellant, therefore, was not prejudiced by his trial counsel's failure to use a document that he testified he would not have used and that the rules of evidence deem inadmissible.

The trial court did not abuse its discretion in denying appellant habeas relief based upon his ineffective assistance of counsel claim.

---

[7] Officer Lindsey testified he worked an intersection "off duty" (thus, "overtime" pay) that morning. (RRIV —TT at 145).

## C. Conclusion

Because the bases of appellant's ineffective-assistance claim is either without merit or barred by the equitable doctrine of laches, the trial court never abused its discretion in denying appellant his requested relief.

—————————◆—————————

## **PRAYER**

The State respectfully requests this Court affirm the trial court's ruling, denying appellant habeas relief.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Bridget Holloway*

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
1201 Franklin Suite 600
Houston, Texas 77002
(713) 755-5826
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

## CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE

This is to certify: (a) that the word count of the computer program used to prepare this document reports that there are 4454 words in the document; and (b) the undersigned attorney requested that a copy of this document be emailed through TexFile to the following email on May 18, 2015:

Randy Schaffer
Attorney at Law
Email: noguilt@swbell.net

Brian Wice
Attorney at Law
Email: wicelaw@att.net

/s/ *Bridget Holloway*

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

19